ERIOUS JOHNSON, JR. OSB #130574
E-mail: ejohnson.HJLLC@gmail.com
HARMON JOHNSON LLC
1415 Commercial St. SE
Salem, OR 97302
Phone: (503) 991-8545
Fax: (503) 622-8545

Of Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

REGINIA GRIDER,

Plaintiff,

v.

OREGON STATE UNIVERSITY,

Defendants

Civil Case No. 6:20-cv-01176-MC

**FIRST AMENDED COMPLAINT**

(Employment Discrimination Based on Race/Gender in violation of Title VII of the Civil Rights Act of 1964 pursuant to 42 USC § 2000e-2;
and
Common-Law Defamation *per se*)

**DEMAND FOR A JURY TRIAL**

## I. INTRODUCTION

1. Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, Plaintiff alleges unlawful employment discrimination based on the intersection of her race and gender. Pursuant to Oregon common-law, Plaintiff alleges the intentional tort of defamation *per*





*se*. Plaintiff is seeking economic and noneconomic damages, equitable remedies, including declaratory judgment, attorney fees and litigation expenses/costs, including expert witness fees and expenses in an amount to be determined by a jury at trial.

## II. JURISDICTION AND VENUE

2. This court has jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1343 and 28 U.S.C. § 1367 because plaintiff asserts a cause of action arising under the Constitution, laws, or treaties of the United States. The court has supplemental jurisdiction of Plaintiff's state law claims under 28 U.S.C. § 1367.

3. Venue is in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because the claims arose in this judicial district.

4. On or about August 13, 2019, Plaintiff dual filed an administrative complaint with the Bureau of Labor and Industries ("BOLI") and the Equal Employment Opportunity Commission ("EEOC") alleging wrongful discrimination as herein alleged. On or about June 29, 2020, BOLI issued a right to sue on its behalf and on behalf of the EEOC to Plaintiff, as such, this action has been commenced within 90 days after Plaintiff received that notice.

5. Plaintiff provided Defendants Notice of her claims for money damages on July 9, 2019 and have thereby satisfied the requirements of the Oregon Tort Claims Act, as specified in ORS 30.275(3)(c).

## III. PARTIES

6. At all material times, Reginia Grider ("Plaintiff") is an individual and was employed by Defendant Oregon State University (OSU).

////

////





7. Defendant OSU is "an international public research university that draws people from all 50 states and more than 100 countries." Defendant OSU's main office is located at 1500 SW Jefferson Way, Corvallis, OR 97331. Defendant OSU is an "employer," pursuant to ORS 659A.001(4)(a) and 42 U.S.C. § 2000e(b), and "person," pursuant to ORS 659A.001(9) and 42 U.S.C. § 2000e(a). Thus, Defendant is responsible under state law for the acts and omission of its agents and other employees, including those whose conduct is at issue herein

**IV. FACTS**

8. Plaintiff is a Black Woman.

9. Plaintiff is a veteran of the US Army Reserves and Alabama Army National Guard with a 29-year career as a federal civil servant which includes foreign service to US Department of State and support to a President and the US Congress.

10. On October 23, 2018, Defendant, through its Vice President for Finance & Administration/Chief Financial Officer, Michael J. Green, offered Plaintiff the position of Associate Vice President for Finance & Controller.

11. Plaintiff was the first and only Black finance executive ever employed at OSU.

12. Plaintiff re-located from Maryland to take the job.

13. Defendant set an expectation that Plaintiff's employment contract would be renewed annually, for five years.

14. Plaintiff's annual salary was $201,000.

15. Plaintiff's annual reappointment was at the discretion of Mr. Green.

16. On or about November 30, 2018, Plaintiff began as working as the Associate Vice President of Finance and Controller for OSU and attended an event where she was introduced to OSU staff.





HARMON JOHNSON LLC
1415 COMMERCIAL ST. SE
SALEM, OR 97302
EJOHNSON.HJLLC@GMAIL.COM
(503) 991-8545 (PHONE)
(503) 622-8545 (FAX)

17. During this event, Plaintiff mentioned using approved sick leave during her last week of employment with the Department of the Navy.

18. Later that day, Mr. Green asked to meet with the Plaintiff in her office. During this meeting, Mr. Green told Plaintiff that someone expressed a concern that her statements did not set the right tone at the top and that sick leave is only approved when an employee is sick.

19. Plaintiff assured Mr. Green that she had no history of abusing sick leave, having accumulated over 700 hours (88 days) of sick leave while with the Navy.

20. During a meeting regarding improvement of business processes across the University, Plaintiff discussed measures for ensuring that the travel credit card issued to individuals by the University was not abused or misused. Plaintiff used a lighthearted example of using cash or a personal credit card to purchase liquor or expensive menu items such as steak. Mr. Green was not in attendance at this meeting.

21. Mr. Green did not raise any issues with Plaintiff or otherwise inform her that her statement was problematic.

22. On or about December 15, 2018, Plaintiff sent Mr. Green—and no one else—an email expressing a need to terminate her Executive Assistant, Rhonda Thomassen.

23. Plaintiff's reasons for wanting to terminate Ms.Thomasson included, but were not limited to, Ms. Thomassen's inability to:

a) "take ownership and accountability for her role";

b) "work" and "approach" Plaintiff;

c) "exercise sound judgment";

d) "make appropriate decisions";

e) "effectively manage time";





f) "operate within a change environment";

g) "perform with minimum supervision";

h) "create, innovate, collaborate, coordinate, partner, or communicate";

i) "design effective and efficient solutions"; and

j) "us[e] office software including PowerPoint and Excel."

24. Plaintiff surmised that Ms. Thomassen was "overwhelmed"; "ma[d]e excuses and blam[ed] others for her performance and behavioral shortfalls."

25. Plaintiff noted that Ms. Thomassen:

a) "was not an experienced executive assistant when she was promoted from the receptionist position";

b) "was not developed or trained";

c) "was not being held accountable"; and

d) "has not been willing to transition into the new role."

26. Plaintiff added that "[a]s the Controller, I want to set the tone from the top that the office will hire the most qualified people."

27. And that "[p]roviding me with the opportunity to employ the best Executive Assistant who is worthy of an investment of training and development would create equity among me and your other direct reports, and minimize risk to the University."

28. In response to Plaintiff's myriad reasons for wanting to terminate Ms. Thomassen, Mr. Green focused on Plaintiff's claim that Ms. Thomassen lacked the "intelligence" for the position.

29. Mr. Green instead assailed Plaintiff's "professional judgment and empathy."

////





HARMON JOHNSON LLC
1415 COMMERCIAL ST. SE
SALEM, OR 97302
EJOHNSON.HJLLC@GMAIL.COM
(503) 991-8545 (PHONE)
(503) 622-8545 (FAX)

30. Mr. Green then accused Plaintiff of making a "declaratory determination of another person's intelligence with so little evidence."

31. On or about December 21, 2018, taking Mr. Green's accusation that there was a lack of "evidence" to heart, Plaintiff sent a subsequent email, to the Office of the Controller Executive Assistant Employee Relations, wherein Plaintiff "provide[d] documentation to support [her] request to terminate Rhonda Thomassen for cause."

32. Plaintiff attached to that email *thirty-five* documented events Plaintiff considered sufficient to terminate Ms. Thomassen for cause.

33. Plaintiff's due diligence triggered Mr. Green's white, male, racist, patriarchal, discriminatory and segregationist mentality, evidenced by his January 8, 2019, Memorandum to Viki Dimick-Jackson, titled *Request for Non-Renewal of Unclassified Contract* (hereinafter "Memo").

34. Rather than exercise a level of emotional intelligence and empathy himself, Mr. Green uses his Memo to belittle Plaintiff's judgment, point of view and position.

35. Mr. Green opens his Memo by insisting that Plaintiff remove herself from the OSU campus, and that her position be "revoked."

36. Mr. Green impugns Plaintiff's "actions and behaviors," which he claims, "do not align with the Oregon State Code of Ethics or Performance Criteria for Professional Faculty."

37. Mr. Green considered Plaintiff's "evidence" and documentation in support of her prior request to terminate a "challenge" to his supremacy that "bordered on insubordination."

38. In response to Plaintiff's concerns that Ms. Thomassen was not "comfortable working with" or "approaching" Plaintiff, Mr. Green sided with the *subordinate* white woman over an *Executive* level Black woman.





39. Mr. Green stated that Plaintiff's concern "demonstrates a lack of willingness to accept responsibility for developing a working relationship with a co-worker and shifts all of the blame for the challenges that she is having to Ms. Thomassen. Ms. Thomasasen's comfort level working with [Plaintiff] rests largely with [Plaintiff]."

40. Mr. Green's statement epitomizes his racist and segregationist tendencies. He stripped Plaintiff of any power by making her an equal to her *subordinate*, whom Plaintiff must accommodate, instead of the other way around.

41. Additionally, Mr. Green required the lone Black women in OSU's all-white Executive Administration to *integrate* herself, rather than endeavoring to *include* her.

42. This speaks to OSU's racists and discriminatory practice of putting outspoken Black people "in their place." A dynamic which explains the absence of any Black people in leadership positions on OSU's campus.

43. Mr. Green suggested that Plaintiff undergo coaching regarding her "professional judgment", "tone", "behavior"—to which Plaintiff acquiesced.

44. However, there is no indication that anyone at OSU ever spoke to, coached or advised Ms. Thomassen about her performance under Plaintiff or lack thereof.

45. This differential treatment represents a complete and utter disregard by OSU's white majority structure for anything Plaintiff, an *Executive level* Black woman, had to say regarding the performance of a *subordinate* white woman within OSU's administration.

46. Mr. Green then goes on in the Memo to address the statements Plaintiff made at the OSU function on or about November 30, 2018, regarding using sick leave to come out to Oregon. And statements she made around "ways to circumvent controls." The former was a joke. The latter should not have been an issue.




HARMON JOHNSON LLC
1415 COMMERCIAL ST. SE
SALEM, OR 97302
EJOHNSON.HJLLC@GMAIL.COM
(503) 991-8545 (PHONE)
(503) 622-8545 (FAX)

47. Indeed, Mr. Green acknowledged in his memo that "it [was] entirely possible that either or both comments were taken out of context, the fact is that [Plaintiff] made those comments."

48. Since both statements were made by a Black woman, who OSU hired but subsequently discovered was prepared to do her job as she saw fit, they were shaded with negative connotations, and used as a pretext to terminate Plaintiff's employment.

49. Mr. Green has since lobbed time-honored defamatory salvos designed to torpedo Plaintiff's career and reputation: That he cannot trust this Black woman, like he can trust his white "leaders."

50. Mr. Green used the exact language Plaintiff used to describe Ms. Thomassen—ultimately to her detriment: "[e]vidence to date regarding specific aspects of expected leadership performance leads me to conclude that [Plaintiff] is either unwilling or unable to make needed changes in her behavior."

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 2000e-2(a)**
**TITLE VII**
**Unlawful Employment Discrimination**
**Based on the Intersectionality of Race and Sex**

51. Plaintiff incorporates paragraphs 1 through 50 as if fully set forth herein.

52. "It shall be an unlawful employment practice for an employer to … discharge any individual, or otherwise to discriminate against any individual with respect to [their] compensation, terms, conditions, or privileges of employment, because of such individual's race, [and] sex … or to limit, segregate, or classify [their] employees … in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect [their] status as an employee, because of such individual's race [and] sex … ."





53. Plaintiff was terminated seven months after leaving Maryland and moving to Corvallis, based upon OSU promises.

54. Plaintiff's efforts to get her personal assistant fired or transferred were reasonable.

55. Plaintiff's long, successful managerial history belies any suggestion that she could not fulfill the duties of her position.

56. Plaintiffs position was filled by Heidi Sann, a less qualified white female.

57. The average OSU employee has been employed 8 years and they are/were all white.

58. The only other individual who has been fired from OSU was due to a policy violation, ie a human resources employee attempted to get a relative hired.

59. The bar for firing employees is extremely high at OSU, however, it was significantly lowered in Plaintiff's case.

60. Ms. Thomassen has never been disciplined, reassigned, coached or otherwise apprised of the deficiencies in her performance.

61. As a direct and proximate result of Defendants unlawful acts, Plaintiff has suffered economic damages in the form of lost wages and benefits in the amount $1,000,000.

62. As a direct and proximate result of Defendants unlawful acts, Plaintiff has suffered outrage, betrayal, offense, indignity, embarrassment, humiliation, injury and insult in amounts to be determined by the jury at trial.

63. Defendants conduct toward Plaintiff demonstrated a wanton, reckless or callous indifference to Plaintiff's federally protected rights, which warrants an imposition of punitive damages in such amounts as the jury may deem appropriate to deter future violations.

64. Plaintiff seeks recovery of all other equitable relief and damages as provided by





law, in addition to reimbursement of her reasonable attorneys' fees and costs pursuant to 42 USC § 1988 and 28 USC §1927, if appropriate.

**SECOND CLAIM FOR RELIEF**
**Defamation *per se***

65. Plaintiff incorporates by reference the allegations of paragraphs 1 through 64 above.

66. A statement is defamatory if it is false and ascribes to another conduct, characteristics or a condition incompatible with the proper conduct of that person's lawful business, trade, or profession.

67. Statements falsely alleging facts that are likely to lead people to question a plaintiff's fitness to perform his job are defamatory *per se*.

68. Mr. Green published numerous falsehoods in his January 8, 2019 Memo, that ascribed conduct, characteristics and conditions incompatible with the proper conduct of Plaintiff's lawful business, trade, or profession.

69. Mr. Green published numerous falsehoods in his January 8, 2019 Memo, intended to lead people to question Plaintiff's fitness to perform her job.

70. Mr. Green published his defamatory statements in his Memo as a pretext for Defendants unlawfully terminating Plaintiff's employment.

71. As a direct and proximate result of Defendant's unlawful acts, Plaintiff has suffered economic damages in the form of lost wages and benefits in amounts to be determined by the jury at trial.

72. As a direct and proximate result of Defendants unlawful acts, Plaintiff has suffered outrage, betrayal, offense, indignity, embarrassment, humiliation, injury and insult in amounts to be determined by the jury at trial.





73. Defendants conduct toward Plaintiff demonstrated a wanton, reckless or callous indifference to Plaintiff's rights, which warrants an imposition of punitive damages in such amounts as the jury may deem appropriate to deter future violations.

**WHEREFORE**, Plaintiff prays for judgment against defendants as follows:

1. Economic damages in the form of back wages and benefits in the amount of one million dollars.

2. Economic damages in the form of lost future income and benefits in an amount to be determined at trial;

3. Non-economic damages in the form of pain, mental suffering, emotional distress, humiliation, injury to reputation and inconvenience in an amount to be determined at trial;

4. Equitable remedies in the form of requiring Defendant OSU to:

   a. Mandate an equity lens in the professional development of staff;

   b. Create a policy regarding the diversification of its executive staff;

   c. Require sensitivity training regarding the treatment and perceptions of Black Women in the workforce;

   d. Conduct periodic performance appraisals and employee development plans; and

   e. Require its Human Resources Department to develop and implement diversity recruitment and retention plans;

5. All available equitable relief and damages in amounts to be determined at trial, consistent with the claims above against Defendants;

6. Punitive damages consistent with the claims above against defendants in amounts to be determined at trial;





7. Reasonable attorneys' fees and litigation expenses/costs herein, including expert witness fees and expenses, consistent with the claims above against defendants; and

8. Grant such other relief as is just and proper.

DATED this 10th day of August, 2020.

**HARMON JOHNSON LLC**

Erious Johnson, Jr., OSB #130574
E-mail:*ejohnson.HJLLC@gmail.com*

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL**



HARMON JOHNSON LLC
1415 COMMERCIAL ST. SE
SALEM, OR 97302
EJOHNSON.HJLLC@GMAIL.COM
(503) 991-8545 (PHONE)
(503) 622-8545 (FAX)